UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERAMIE J. KELLEY,

    Plaintiff,

v.                                                        Case No. 1:16-cv-1232
                                                        Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplement security income (SSI).

Plaintiff alleged a disability onset date of March 9, 2012. PageID.369. He identified his disabling conditions as compression fracture of L4 vertebra, back injury, anxiety, carpel tunnel syndrome and acid reflux. PageID.373. Prior to applying for DIB and SSI, plaintiff completed one year of college and had past employment as a roofer and material handler. PageID.61. Plaintiff stated that he injured his back in an accident on March 8, 2012, and that he later fractured his right distal fibula. Plaintiff's Brief (ECF No. 12, PageID.1743). This is the second decision from Administrative law judge (ALJ) Guyton. On August 16, 2013, ALJ Guyton denied plaintiff's claim. PageID.179-193. The Appeals Council remanded the case for further proceedings on February 1, 2015. PageID.200-202. On remand, ALJ Guyton reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on July 7, 2015. PageID.51-63. This decision,

which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 9, 2012, and met the insured status requirements of the Social Security Act through June 30, 2105. PageID.54. At the second step, the ALJ found that plaintiff had severe impairments of: cervical and lumbar degenerative disc disease; L4 compression fracture; osteopenia; Ehlers Danlos syndrome; affective and anxiety disorders; substance addiction disorder - cannabis and alcohol abuse in remission; and attention deficit hyperactivity disorder (ADHD). PageID.54. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.55.

The ALJ decided at the fourth step that:

> [C]laimant claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can lift and carry ten pounds occasionally and less than ten pounds frequently. He can stand and walk for two hours and sit for six hours in an eight-hour workday. He requires the use of a cane for ambulation. With the upper extremities, he can handle and finger frequently. He is limited to occasional balancing, stooping, crawling, kneeling, and crouching. He can occasionally climb ramps and stairs but never ladders, ropes, and scaffolds. He should not be exposed to hazardous machinery or unprotected heights. He is limited to unskilled work which consists of simple, routine tasks; involving no more than simple instructions and simple work-related decisions, with few workplace changes. He can maintain concentration for the two-hour segments needed to sustain work. He can have no contact with the general public.

PageID.57. The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.61.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level in the national economy. PageID.62. Specifically, the ALJ found that plaintiff could perform the requirements of sedentary and unskilled occupations such as inserter (125,000 jobs nationwide), machine attendant (110,000 jobs nationwide), and parts checker (90,000 jobs nationwide). PageID.62. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from March 9, 2012 (the alleged onset date) through July 7, 2015 (the date of the decision). PageID.62-63.

### III. DISCUSSION

Plaintiff set forth three issues on appeal:

**A. The ALJ erred when she did not consider all of the evidence in the administrative record in assessing plaintiff's residual functional capacity (RFC).**

Plaintiff contends that the ALJ ignored evidence of plaintiff's posterior tibial tendon dysfunction with lateral impingement and an examination which showed a pathologic flexible PES planovalgus deformity, conditions which called into question his ability to stand and walk to any significant degree during an 8-hour workday. The record reflects that the ALJ considered plaintiff's ability to stand and walk. As discussed, the ALJ's RFC limited plaintiff to two hours of standing and walking in an eight-hour workday. PageID.57. The ALJ's failure to recognize these conditions as separate severe impairments at step two is legally irrelevant. *See Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008). Accordingly, plaintiff's claim of error will be denied.

**B. The ALJ erred when she failed to comply with the Social Security Administration's rules in evaluating opinion testimony of plaintiff's treating physician, consultative examiner, and treating source.**

5

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good

reasons in our notice of determination or decision for the weight we give your treating source's opinion").

1. **John S. Winestone, M.D.**

Plaintiff contends that the ALJ failed to adequately evaluate the opinion of treating physician Dr. Winestone, who limited him to a reduced range of sedentary work, restricted him from excessive bending, twisting, stretching, reaching, and opined that he was unable to lift any weight. The ALJ addressed Dr. Winestone's opinion as follows:

> In April 2012, the claimant presented to Great Lakes Neurosurgical Associates with complaints of severe back pain (Ex. 4F, pg. 4). Upon examination of the claimant, treating physician John S. Winestone, M.D., noted full muscle strength with normal muscle bulk and tone, intact sensation and reflexes, and normal coordination and gait (*Id.*). These results were echoed during a June 2012 follow up visit, in which Dr. Winestone noted that the claimant's physical examination was "stable with no evidence of motor weakness or sensory deficit" (Ex. 4F, pg. 1). Review of the claimant's diagnostic testing revealed no evidence of subluxation or kyphosis and good alignment in the standing position" (*Id.*). In March, the claimant presented to Michigan Pain Consultants where he demonstrated normal muscle tone, a mildly antalgic gait, and intact sensation (Ex. 11F, pg. 4). The claimant's pain specialist, Scott Greenwald, M.D., characterized the claimant's compression fracture as "mild" and noted, "diagnostic studies [are] not noting much in terms of pathology so it may be difficult to get disability for this" (Ex. 11F, pg. 9). In April 2015, the claimant exhibited normal gait, posture, and right lower extremity strength (Ex. 35F, pgs. 130-132).
>
> Despite these consistent normal findings, Dr. Winestone completed several *Medical Work Release* forms in which he limited the claimant to a reduced range of sedentary work (Ex. 4 F, 8F). In October 2012, Dr. Winestone restricted the claimant from "excessive" bending, twisting, stretching, reaching, and opined that he was unable to lift any weight (Ex. 8F). He further clarified this as "no heavy lifting" (*Id.*). The undersigned affords very little weight to these opinions because they are vague and inconsistent with the objective medical evidence of record. As described above, the claimant has exhibited normal muscle tone, strength, sensation, and reflexes (Ex. 4F). His diagnostic studies have "not noted much in terms of pathology" (Ex. 11F). Additionally, Dr. Winestone found no evidence for neural compression or instability that would warrant a surgical intervention (Ex. 10F, pg. 1). Dr. Winestone's restrictions appear to be out of proportion with the claimant's normal physical and diagnostic findings. This suggests that the Dr. Winestone's restrictions are based on the claimant's subjective complaints rather than objective findings.

> The claimant's daily activities suggest a greater ability to lift and carry than alleged by the claimant. The record demonstrates that the claimant injured his hand while lifting a trailer hitch, broke his leg while walking in the woods in search of a hunting spot, and is caring for his young children (Ex. 22F, pg. 39; 24F, pg. 1; Hearing Testimony). None of these activities are dispositive on the issue of disability, however they do suggest a greater ability to lift, carry, and walk that the claimant's subjective allegations of pain and dysfunction would indicate.

PageID.59.

Upon reviewing the record and the ALJ's decision, the Court concludes that the ALJ gave good reasons for the weight assigned to Dr. Winestone's opinion. The ALJ noted inconsistencies in the record regarding plaintiff's ability to lift. In this regard, Dr. Winestone's October 22, 2012 work restriction itself contains inconsistencies, with the doctor stating "No lifting over ∅ pounds" with an apparent clarification of "*No heavy lifting*". PageID.565. Furthermore, plaintiff testified that he was able to lift about ten pounds, which is consistent with the ALJ's RFC finding that plaintiff can perform sedentary work "except he can lift and carry ten pounds occasionally and less than ten pounds frequently." PageID.90. Accordingly, plaintiff's claim of error will be denied.

### 2.    Carol-Sunday-Rasche, MA, LLP

Plaintiff contends that the ALJ improperly afforded "little weight" to the opinions of Carol Sunday-Rasche who found that plaintiff had marked limitations in his ability to: deal with work stresses; maintain attention/concentration; understand, remember, and carry-out complex job instructions; demonstrate reliability and maintaining concentration, persistence, and pace. The ALJ addressed Ms. Sunday-Rasche's opinion as follows:

> The record also contains a Medical Provider's Assessment of Ability to do Mental Work-Related Activities, in which the claimant's treating provider, Carol Sunday-Rasche, M.A., found the claimant to have marked limitations in his ability to:
> • Deal with work stresses;
> • Maintain attention/concentration,

8

> • Understand, remember, and carry-out complex job instructions;
> • Demonstrate reliability and
> • Maintaining concentration, persistence, and pace (Ex. 23F).
>
> Ms. Sunday-Rashe [sic] attributed the claimant's limitations to chronic pain affecting "his reliability and dependability" as well as his other physical conditions (Ex. 23F). The undersigned affords little weight to this opinion because it is inconsistent with the longitudinal medical record. As described above, the claimant has demonstrated appropriate mood and affect and relevant, logical, and connected thought processes (Ex. 6F, 11F, 35F). Ms. Sunday-Rashe [sic] found that the claimant had more than four episodes of decompensation, however, the record including Ms. Sunday-Rashe's [sic] treatment records, does not detail these episodes (Ex. 26F). Additionally the undersigned notes that Ms. Sunday-Rashe [sic] is not an acceptable medical source and thus, cannot issue a medical opinion (*See* 20 CFR 404.1513(a), 404.1527(a)(2), 416.913(a), and 416.927(a)(2)).

PageID.60.

As an initial matter, there is the question of Ms. Sunday-Rasche's status. The ALJ stated that Ms. Sunday-Rasche could not issue a medical opinion because she was not an acceptable medical source. PageID.60. For its part, defendant's brief includes a footnote stating, "[p]laintiff speculates that Ms. Sunday-Rasche was a license psychologist, but as this is the first mention of this theory, any argument associated with it is waived." Defendant's Brief (ECF No. 15, PageID.1771 n. 10). Defendant's argument is disingenuous. The Appeals Council's order identified her as a psychologist, explicitly referring to "the opinion of Carol-Sunday Rasche, MA, LLP." PageID.201. In addition, Ms. Sunday-Rasche signed the assessment with the designations "MA, LLP," stating that she first treated plaintiff on 1/29/13 and most recently treated him on 7/2/13. PageID.1180-1182.

While the ALJ made a conclusory finding that Ms. Sunday-Rasche was not an acceptable medical source, [1] this Court previously concluded that Ms. Sunday-Rasche was both a

---

[1] In this regard, the Appeals Council ordered "further evaluation of Ms. Sunday-Rasche's opinion is required pursuant to Social Security Ruling 06-03p." PageID.201. The Court notes that one of the stated purposes of SSR 06-03p is "[t]o clarify how we consider opinions from sources who are not "acceptable medical sources." It is unclear to the

limited license psychologist and an acceptable medical source under the regulations. *See Molina v. Commissioner of Social Security*, No. 1:14-cv-648, 2015 WL 5097553 at *7 (W.D. Mich. Aug. 28, 2015) (listing cases). Based on this record, the ALJ did not properly evaluate Ms. Sunday-Rasche's opinions as those expressed by an acceptable medical source. Accordingly, this matter will be reversed and remanded pursuant to 42 U.S.C. § 405(g). On remand, the ALJ should evaluate Ms. Sunday-Rasche's opinions as those of an acceptable medical source.

### 3.    Cynthia Raven, MA, LLP

In August 2012, Ms. Raven performed an adult mental status evaluation of plaintiff. PageID.537-541. The ALJ addressed Ms. Raven's opinion as follows:

> The claimant also attended a Consultative Examination in August 2012, where he was diagnosed with major depressive disorder, recurrent moderate; panic disorder without agoraphobia; ADHD, and assessed a Global Assessment of Functioning (GAF) score of 54 (Ex. 6F). Upon mental status examination, the claimant exhibited relevant, logical, and connected thought processes (*Id.*). He denied delusions, hallucinations, paranoia, blackouts, and suicidal and homicidal ideation (*Id.*). Consultative examiner Cynthia Raven, MA, LLP, supervised by Dennis L. Mulder, Ed.D., opined, "the potential for the [claimant] becoming gainfully employed in a simple, unskilled work situation on a sustained and competitive basis is guarded pending psychiatric treatment for symptoms of depression and anxiety" (*Id.*). The undersigned affords limited weight to this opinion because it is inconsistent with the objective medical evidence of record. Ms. Raven's examination of the claimant found relevant, logical, and connected thought processes and the claimant denied delusions, hallucinations, paranoia, blackouts, and suicidal and homicidal ideation (*Id.*). Further, in March 2013, the claimant was oriented to person, place, and time, and demonstrated an appropriate mood and full affect (Ex. 11F). In April 2015, the claimant's mental state "appear[ed] normal" (Ex. 35F, pgs. 130-132).
>
> A GAF from 51 to 60 is indicative of "moderate" symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., no friends, unable to keep a job) (DSM-IV, 4th Ed., page 32). The undersigned affords limited weight to this score because as described above, the claimant has demonstrated largely normal mental status findings (Ex. 6F, 11F).

---

Court whether the Appeals Council concluded that Ms. Sunday-Rasche was not an acceptable medical source or wanted the ALJ to decide whether she was an acceptable medical source.

PageID.60.

The regulations provide that the agency will evaluate every medical opinion received "[r]egardless of its source," and that unless a treating source's opinion is given controlling weight, the agency will consider the factors set forth in §§ 404.1527(c)(1)-(6) and 416.927(c)(1)-(6) in deciding the weight given to any medical opinion. *See* 20 C.F.R. §§ 404.1527(c) and 416.917(c). While the ALJ is required to give "good reasons" for the weight assigned a treating source's opinion, *Wilson*, 378 F.3d at 545, this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir.2007). However, "the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Commissioner of Social Security*, 451 Fed. Appx. 517, 519 (6th Cir. 2011) (internal quotation marks omitted). Here, the ALJ has sufficiently articulated her reasons for giving Ms. Raven's opinion limited weight. Accordingly, plaintiff's claim of error will be denied.

### C. The ALJ erred by failing to follow SSR 96-7p[2]

Social Security Regulation (SSR) 96-7p cautions that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment," and that one of these explanations

---

[2] Plaintiff's statement of errors incorrectly referred to this SSR as "SSR 98-7p." The Court notes that SSR 96-7p, while applicable in this case, was superseded by SSR 16-3p on March 28, 2016.

may be that "the individual may be unable to afford treatment and may not have access to free or low-cost medical services."[3] Plaintiff's claim arises from the following statement:

> The undersigned further notes that the claimant has not received specific psychiatric treatment since June 2014 (Ex. 26F, Hearing Testimony). When a claimant alleges a condition severe enough to be disabling, there is a reasonable expectation that the claimant will seek examination and treatment. The claimant's lack of treatment during this time undermines his allegations of disabling symptoms during this time.

PageID.60. Plaintiff has provided little argument on this issue, other than to point out that the ALJ made an improper inference under SSR 96-7p. While plaintiff did not develop the argument, the Court concludes that this matter should be remanded pursuant to 42 U.S.C. § 405(g) for re-evaluation because it appears that the ALJ completely discounted plaintiff's alleged mental impairments since June 2014 based, at least in part, on an improper inference drawn from plaintiff's failure to seek out psychiatric treatment. Accordingly, on remand, the ALJ should re-visit this inference and address information in the case record that may explain plaintiff's failure to seek psychiatric treatment.

## IV. CONCLUSION

Accordingly, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate the opinions of Ms. Carol Sunday-Rasche, MA, LLP, as those of an acceptable medical source. In addition, the Commissioner is directed to re-evaluate the adverse

---

[3] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 498 (6th Cir. 2006), quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 549 (6th Cir.2004) (citations omitted).

inference drawn from plaintiff's lack of psychiatric treatment since June 2014 in accordance with SSR 97-6p.  A judgment consistent with this opinion will be issued forthwith.


Dated:  March 28, 2018                               /s/ Ray Kent
                                                      United States Magistrate Judge